JANUARY TERM, 1882, No. 322.           FEBRUARY 21ST, 1882.

# Edward Clarkson and Maggie C. Love, Administrators of James Clarkson, deceased, *versus* Samuel Thom.

1. Whether a prior indebtedness from the defendant to the plaintiffs' intestate formed a part of the consideration of the judgment-note in suit, was a question of fact necessarily left to the jury.

2. A voluntary judgment-note cannot be enforced between the parties upon the ground that it was intended to defraud and hinder creditors, in the absence of evidence, that at the time of its execution the obligor was in debt, or contemplating indebtedness, or entering upon a hazardous undertaking that might involve him in debt.

3. Assignments of error based upon the answers of the Court below, to points of law which had no evidence to support them, will not be considered.

4. If the plaintiffs seek to recover the amount of the judgment-note in suit, upon the ground that it was given by defendant to their intestate in trust for the benefit of the wife of the defendant, they should raise the question by a distinct issue in the Court below, and in the absence of such issue it is not error for that Court to instruct the jury that, if they found that the judgment was given for the benefit of the wife, and the plaintiffs were seeking to divert it from that purpose and recover for the use of the estate, the verdict should be for the defendant.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, STERRETT, and GREEN, JJ. TRUNKEY, J., absent.

Error to the Court of Common Pleas of *Wayne County*.

*Scire facias* to revive a judgment entered April 3d, 1872, by James Clarkson against Samuel Thom for $4154.29, upon a note with confession of judgment, dated March 14th, 1872, payable six months after date, with interest.

April 2d, 1877, the death of the plaintiff was suggested, and his administrators were substituted of record.

February 4th, 1878, a rule to open the judgment was made absolute.

Upon the trial in the Court below, before WALLER, P. J., the plaintiffs offered in evidence the note, signed by Thom, and rested.

The defendant produced *Ann Sheppard*, who testified that she was present when a note was given by Thom to Clarkson, and she continued, *inter alia:*

Q. State if you knew that Mr. Clarkson was there?

A. No, sir; I did not, but when I got in there, I found that Mr. Thom and him were having words, very rabid, both of them.

Q. State as near as you can recollect what conversation took place between Mr. Clarkson and Mr. Thom?

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

A. Mr. Thom had been off on a drunk, and Mr. Clarkson had been informed that he had been signing notes to somebody in Carbondale—I think Morrison; I am not at all sure of that. Said he, " Samuel, you won't have a hole to put your head in." Then he said again, " You won't have a home to put your head in,"—he said, " Mrs. Thom won't have a home."

Q. What else did he say?

A. He wanted to talk, and Mr. Thom couldn't talk with him, he was so wrathy; so he sent him down to Waymart to get a pint of whisky. Then when he was gone, Mr. Clarkson talked with Mrs. Thom, and she was crying. " Well," said he, " if Samuel has done this, you won't have a home." " Well," she said, " there must be something done, and he must do just as he pleased, for she didn't understand it." And he asked her if she had any blanks, and she said she had some left from the vendue. She gave it to him and he sat down and wrote. Then when Mr. Thom came back again Mr. Clarkson read this note to Mr. Thom. Mr. Thom said, " I don't owe it and I won't sign it." He wanted him to sign it. Mrs. Thom said, " Oh! do, Samuel, sign it," and so he signed it.

Q. What did Mr. Clarkson say?

A. Said he, " Samuel, I know that it is for no value received." That is just what he said.

Q. Why did he say he wanted him to sign it?

A. Can't tell you; I know he asked him to sign it—why, to save him, supposing he had signed these notes; if he signed that note, that would keep anybody else off from it. It is so many years ago that I can't recollect particularly everything, and I should think you couldn't expect me to.

Q. For whose benefit did Mr. Clarkson say the note was to be given?

A. For Mrs. Thom, for a home for her; because he didn't think much of Mr. Thom, because he was spending so much.

Q. What, if anything, did Mr. Clarkson say as to the actual amount that Mr. Thom owed him?

A. Said he, " Samuel, there is three hundred dollars." " I know that," said he, " but I haven't it now to pay." Said he, " I didn't ask you for it; I may never call on you for it," said he, or something to that effect, " for I have had a good deal of value off the place." He didn't say he wouldn't—he said he might never.

Q. Do you remember what was the amount of that note that he got Mr. Thom to sign?

A. It was four thousand and some odd—I can't remember.

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

Upon cross-examination she testified:

Q. Was anything said after you took the sling?

A. Mr. Clarkson said, " Mrs. Sheppard, you remember this is for no value received."

Q. What was the note given for—what was the object of it?

A. Because he said Mr. Thom had been signing notes to people, and they were afraid they would distress Mrs. Thom. He said Mrs. Thom wouldn't have a home to her head, if he had done it. Said he, " I haven't done it, as I know of." " No, Samuel," said he, " I know that when you got in liquor you wouldn't know what you did."

Q. How was that going to help her?

A. Because, I suppose, when they came on they couldn't touch anything. They couldn't take it from her because it wouldn't be his.

Q. Did Mr. Clarkson explain how that note was going to benefit her?

A. I don't know whether he did or not. I couldn't tell you ; he said that he had done that and that would save her home ; that they couldn't touch the property.

*Samuel Melville,* a witness for the defendant, testified, *inter alia:*

Q. State if you were at Clarkson's house a short time before his death, and if so what occurred there in Carbondale?

A. I was at his house a short time before his death, and took him in a keg of cider, and he told me to tell her and Mr. Thom to come out and get a large note he held against them, and also their will. He repeated it over to me two or three different times, and when I came out of the hall he called me back again and told me to be sure and tell them to come out and take up the note and the will that he had in his possession.

Q. Did he say anything about going to any place—what other message did he send?

A. About going to Benton—he told me to tell them he didn't think he would ever be able to go to Benton again.

Q. What did he say about that note when he told you to tell them to come down, that he wanted to see them?

A. He wanted to give them a receipt for it and their will that he had in his possession.

Q. What did he say the note was given for?

A. He said he held a large note against them for no value received.

Q. He wanted to give them a receipt for it and also the will?

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

A. Yes, sir.

*Thomas McAndrew*, for the defendant, testified in substance, that he had a conversation with Thom in 1876, about buying the farm of the latter, and that he saw Clarkson, who said that whatever arrangement Thom made would be all right, and that he, Clarkson, would release his claim.

The plaintiffs, in rebuttal, offered in evidence the records of judgments of Clarkson against Thom as follows:

May 25th, 1861, $352.25, May 6th, 1862, $1029.50, and April 1st, 1863, $1252.31.

*Robert Doak*, for the plaintiffs, testified that in March, 1867, he heard a conversation between Clarkson and Thom, in which the latter said, " I owe you, and I thought you would take the farm off my hands again," and the former replied, " You know, Samuel, there is five years' interest on it, and that will eat up farm and stock altogether." He further testified, that some years afterward Thom told him that he owed Clarkson $1000; that some months later he told him that he owed Clarkson $2000; and that in October or November, three years before the trial, he told him that if he had Clarkson paid, he would fix up the old house at the corners, and rent his farm and move in there.

*James Gay*, for the plaintiffs, testified that in 1869 he made an inventory of the notes, judgments, and mortgages in the possession of Mr. Clarkson, and among them was a note signed by Thom for $3504; that in a conversation in the spring of 1870, Thom said to him, " I wonder how much I will be owing Mr. Clarkson," and immediately answered his own question, and said, " I suppose between two and three thousand dollars," and that in another conversation, the same spring, Thom said, " If I could sell one half of the farm, I could nearly clear off Mr. Clarkson's indebtedness, and have the other half for myself."

*Edward Clarkson*, one of the plaintiffs, testified:

He (Thom) came to see me in reference to the matter. I sent word to him, and he told me that a lady in Honesdale, Miss Dimmick, was going to advance him the money to pay these judgments, but that she couldn't get the money before the first of April. . . . . . This was during the winter of 1876 and 1877, probably in the early part of 1877.

Q. When that amount was read to him in that paper, did he make any objection to the amount?

A. Not at all. . . . . I made an appointment to meet him on the first of April. I did meet him at Honesdale. . . . . He told me that this lady had gone to New York and wouldn't be back till Wednesday or Thursday. . . . .

Q. Did you find a note, made in 1869, for $3504?

[Clarkson and Love, Admrs. of James Clarkson, deceased, v. Samuel Thom.]

A. No, sir; nothing of the kind, among father's papers.

*John Murrin,* for the plaintiffs, testified that in 1877, Mr. Thom came there to the store, " and I told them what Mr. Clarkson wanted them to do was to revive this judgment. He said Edward needn't be alarmed; on the first day of April following he would get his money."

Counsel for plaintiffs offered in evidence books, consisting of inventories, etc., in the handwriting of Mr. Clarkson, to show indebtedness on the part of Thom, with dates, amounts, and computations, covering the whole course of business between them down to the year of Mr. Clarkson's death.

The offer was objected to, and the objection was sustained.

Thom testified, on surrebuttal, that what he said to Edward Clarkson was, " What I am owing you I will pay you about the first of April," and that no sum was mentioned at all.

The above constitute the material portions of the testimony.

Counsel for plaintiffs presented a number of points, which, with their answers, will be found in the charge.

The Court charged the jury, *inter alia:*

" You will then perceive that the result of this case depends largely upon the credibility which you may attach to the testimony of Ann Sheppard and Samuel Melville, together with the additional circumstances which have been detailed by other witnesses. The parties themselves could not be witnesses—neither Mr. Thom, the defendant, nor his wife —as to anything that transpired at the time the note was given; neither could Mr. Edward Clarkson testify as to anything that transpired prior to the death of his father. The law which permits parties to a suit to become witnesses, excepts from its operation this class of witnesses, and therefore the mouths of both the plaintiff and the defendant are sealed as to any transactions which occurred affecting this judgment, excepting those which transpired after the death of James Clarkson.

" You have, then, to rely, as we have already said to you, upon the testimony of the defendant as offered. As to the consideration which moved to the giving of this note, it has been alleged by the defendant that this note was reluctantly and unwillingly given by him for the purpose of protecting his wife in the enjoyment of her home, and it has been suggested that, being so given, it would be valid as between the parties, as it was given to defraud creditors. There is nothing in this case, as we understand the evidence, that, at the time this note was given, Samuel Thom was indebted to anybody except James Clarkson, nor that he contemplated

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

incurring any indebtedness or undertaking any hazardous business which would have been likely to render him liable to have judgments entered against him. If that was the fact, and Mr. Clarkson, who was his only creditor, consented, he would have a perfect right to make a settlement upon his wife to such an amount as they in their judgment deemed proper, for the benefit and protection of his wife, and it would have been perfectly legal and binding.

" Evidence has also been adduced in regard to the transactions between these parties, and respecting the judgments obtained from the year 1863 down to the judgment. of $4154.29. Those judgments were offered in evidence, with the further offer on the part of the plaintiffs they would show that they had entered into and constituted a part of the judgment of $4154.29. The offer of the plaintiffs was to show that those judgments, which had been entered in 1863, some nine or ten years before the giving of this judgment, were constituted parts of this judgment given on the 14th of March, 1872. There is no evidence in the case of any settlement between James Clarkson and Samuel Thom at the time of the giving of this note. Indeed, if you discard the evidence of Ann Sheppard, you have no evidence of what transpired between these parties: it does not appear whether any settlement was made at all or not; [but there is no positive or direct evidence that the judgments that had been entered years before, and which had lost their lien upon the property of Samuel Thom, were embraced in the judgment of $4154.29; consequently, we can relieve your minds of any difficulty in regard to those by saying that they need not enter into your consideration. It was perfectly competent to Mr. Clarkson, when he took this note, to have forgiven or discharged the obligations which he had against Mr. Thom up to that time, or to have done it at any time between the giving of those notes, and the taking of the four thousand dollar note   Whether he did so or not, there is no evidence before us, on the one side or the other; and, as there is no evidence that they constituted a part of or basis for this note, it seems to us that they cannot enter into the consideration of this case.]

"[It is further alleged, and the testimony of James Gay tends to prove the fact, that in 1870, or 1871, he saw in the possession of James Clarkson, the deceased, a note for $3500, made by the defendant, Samuel Thom.   We make the same remarks in regard to that note that we have made in regard to the old judgments to which we have just referred.] There seems to be no evidence that the note of $3500 entered into the computation or consideration of the judgment of $4154.29.

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

Indeed, if you take the note of $3500, the judgment of $1252, and the judgment of $1029, and the judgment of $352, you will have an amount largely in excess of $4154.29. Then, you have in evidence that subsequently to the entry of those judgments in 1863, and 1864, and 1867, and along there, a sale was made by Mr. Thom, the defendant, of his personal property, and that somewhere about $1000 was realized, which, it is alleged by him, went into the hands of Mr. Clarkson. And we may here remark, that the transactions between these parties are peculiar in their nature. They do not seem, either of them, to have kept any accounts. They do not seem, either of them, to have passed receipts, or to have transacted business as ordinary people transact business. That may arise from the confidential relations that existed between them, or it may arise from some other cause which the jury may find from the evidence. But it is apparent that, while they had a very large amount of transactions, in one way and another, they have not at any time, so far as the evidence in this case goes to show, made any settlements or had any balancing of accounts or anything of the kind. If, as is alleged on the part of the defendant, and as appears slightly, perhaps, in the evidence of Ann Sheppard, the relations of Mr. Clarkson and Mr. Thom were such as are indicated, he may, as a *protégé* of his, have provided for him from time to time, helped him to accumulate the property he had ; and, if so, he had an undoubted right to do it without let or hindrance from anybody, because a man may do what he pleases with his own property. It was perfectly proper and competent, as we have said, for James Clarkson to have remitted any or all indebtedness that may have existed between him and Samuel Thom—that is, from Samuel Thom to him—prior to 1872, and to have taken a judgment for the protection of Thom's wife, under the circumstances which have been detailed before you, if he did so. That, however, is a question purely for you, gentlemen of the jury. It is a question of fact, and the turning-point in the case— whether this note was taken, at the time it was executed, for the benefit of Mrs. Thom, and to protect the property of Samuel Thom from being squandered by him in his occasional condition of inebriation.

" This case, like all others, is to be passed upon by you upon the evidence adduced. You are to separate the evidence in the case from the allegations of the one side and the other, or the insinuations of the one side or the other, and you are to approach the investigation of the case with a sincere desire to do justice, and a determination to do justice between these parties. You are to take all the evidence in

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

the order in which it has been detailed before you, and examine it carefully and considerately and dispassionately, without fear, prejudice or favor. You are to judge of the credibility of the witnesses, and of their truthfulness, by their manner of testifying, their means of knowledge, and by their apparent candor and fairness in testifying, as well as from their general appearance upon the stand. You are to judge of all the evidence that has been offered, so far as it may bear upon the case, and, taking all the evidence in the case, you will ascertain whether, at the time the note was given, it was given for the purpose which we have suggested or not.

" Certain legal points have been submitted to us by the plaintiffs, upon which we are requested to instruct you.

" (1) The plaintiffs are not required to prove the consideration of the note, on which judgment was entered. The record shows a *prima facie* indebtedness on the part of Thom to Clarkson, of the amount of the judgment, and the burden of proof is on the defendant to show there is in law no valid debt.

" This is a correct proposition of law, and we affirm it. We have already affirmed it in our general charge. In the opening of the charge, we said to you that, being a record of the court, it was, *prima facie*, an indebtedness, and valid, and it devolved upon the defendant to show its invalidity.

" (2) If Thom was indebted to Clarkson by note, judgment or otherwise, prior to the giving of the note in suit, such indebtedness is, in law, presumed to continue until it is proved to have been paid.

" This, as a naked proposition of law, we affirm. But we must qualify it in so far as that we refer the matter to the jury to ascertain, under the transactions between these parties, whether that indebtedness remains or not.

" (3) If Thom was indebted to Clarkson, when said note was given, the note was a settlement of the amount due in the nature of an account stated, and is conclusive, unless a mistake in the settlement is proved.

" This proposition we affirm, with the qualification that, if the jury find from the evidence that such indebtedness was embraced in the $4000 note, then it is conclusive.

" (4) Though a note, given with intent to delay or hinder the collection of the maker's debts, may be impeached by his creditors, it is good as between the parties. Hence, if the note in this case was given for the purpose of creating a lien on Thom's property, to the prejudice or in fraud of creditors, it is good between the parties, and the want of consideration is no defence.

" This is a correct proposition of law, but we do not recall,

in our recollection of the evidence, any testimony tending to show any intention on the part of James Clarkson and Samuel Thom to defraud creditors. We refer it, however, to you, gentlemen, to ascertain, under this point, whether there is any evidence showing intent on the part of these men to defraud creditors.

"(5) A note, given with intent to delay or hinder the collection of debts which the maker may thereafter contract, stands on the same footing in law as if given with intent to delay or hinder the collection of debts already existing. Hence, if the note, in this case, was given with intent to delay or hinder the collection of any indebtedness on the part of Thom, either existing at the time, or that might thereafter be contracted, it is good in law as between the parties, and the want of consideration is no defence.

"This point we negative, for the reasons that we have given you in our general charge, that, if Thom was not indebted at the time, and was not contemplating indebtedness, or entering upon a hazardous undertaking that might involve him in debt, he had a right to settle upon his wife such amount as might be prudent and judicious.

"(6) The character of a note as to fraud is fixed by the intent with which it is given, and the purpose for which it is designed, and not by the actual existence or non-existence at the time of indebtedness on the part of the maker. Hence, if the note, in this case, was given with intent to delay or hinder creditors, it is good as between the parties, whether there was any existing indebtedness on the part of Thom or not.

"This is a correct proposition of law, and is affirmed.

"(7) If the character of the note as to fraud depends on the actual existence of indebtedness on the part of Thom when it was given, the giving of the note with intent to delay or hinder creditors, creates a presumption that such indebtedness existed. The plaintiffs are not bound to prove an indebtedness, but the burden of proof is on the defendant to show that there was none.

"This is also affirmed as a proposition of law.

"(8) The defendant having failed to establish a legal defence by the evidence offered in his behalf, the verdict must be for the plaintiffs for the amount of the judgment, with interest from the date of the note.

"This proposition we negative. We decline to so instruct you. We have already referred it to you as a question of fact to be ascertained, and do not propose to take away from the jury the right of passing upon the questions of fact which belong to them.

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

" (9.) In any view of this case the plaintiffs are entitled to a verdict for the amount due by Thom to Clarkson when the note was given, with interest from that date.

" This proposition is affirmed, if the jury find from the evidence that such indebtedness entered into and constituted part of the consideration of the $4000 note.

" (10.) The defendant having acknowledged in the affidavit made by him, on which the rule to open the judgment was granted, that when the note on which judgment was entered was given he owed James Clarkson $400, and that said note was for the benefit of and belonged to Mrs. Thom, excepting the $400 which defendant owed James Clarkson, and there being no evidence and no allegation that the same has since been paid, the plaintiffs are entitled at least to a verdict for the said indebtedness of $400, with interest from the time the note was given, 14th of March, 1872.

" This would seem to be a fair proposition, and should be affirmed, unless the jury find that such sum was not included and intended to be included in the note, or from the evidence of the witness Melville of the declaration of James Clarkson, just prior to his death, that this note of $4154.29 was given without consideration.

" We will say to you, in regard to the fifth proposition, that if there were any evidence in this case tending to show that there was any intent on the part of James Clarkson and Samuel Thom to defraud creditors, this would be a sound proposition of law ; but, as there has been no evidence offered showing any such intent, we cannot see how that question can enter into your consideration of the case at all. It is not alleged on the part of the plaintiffs, or of the defendant either, that this judgment was given for the purpose of delaying, hindering, or defrauding creditors. It was either given for the benefit of Mrs. Samuel Thom, or else it was given for a subsisting and *bona fide* debt. ·[If you shall find that it was given for the benefit of Mrs. Samuel Thom, and the plaintiffs now seek to divert it from that purpose and recover for the use of the estate, your verdict will be for the defendant.] If, on the other hand, you find that it was honestly given for a fair, subsisting debt between the parties, you will find for the plaintiffs for the amount of the note, with interest from the time the judgment was entered."

Counsel for plaintiffs excepted to the charge.

May 11th, 1881. Verdict for the defendant, upon which judgment was subsequently entered.

Plaintiffs then took out a writ of error, assigning as errors the opening of the judgment ; the refusal to direct a verdict for the plaintiffs ; the answers to the second, third,

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

fourth, fifth, eighth, ninth, and tenth points; the portions of the charge within brackets; and that the charge, as a whole, was calculated to mislead the jury.

*H. Wilson, E. O. Hamlin,* and *H. M. Seely,* for plaintiffs in error.

When the intent is to use a collusive judgment as a barrier against creditors, the judgment is good as against the defendant, notwithstanding the occasion for carrying the purpose into effect does not subsequently arise: Serfoss *v.* Fisher, 10 Barr, 184.

The evidence of defendant presents his indebtedness, and the design to prevent its collection for the benefit of his wife, as the sole purpose of the judgment. A party is not allowed to avoid or revoke his own act by alleging its fraudulent purpose: Blystone *v.* Blystone, 1 P. F. Smith, 375.

If the judgment was taken by plaintiffs' intestate, to be held for the use and protection of the defendant's wife, he was simply clothed with a trust, which it was his right and duty to enforce. The plaintiffs have a right to hold and to revive the judgment. For whose use the plaintiffs sought to recover did not appear, and was not material to the issue: Sherk *v.* Endress, 3 W. & S., 257.

The defendant admitted of record that he owed $400 when the judgment was given.

It was error to instruct the jury, in the absence of direct evidence, that the admitted preceding indebtedness entered into the judgment: this question could not enter into their consideration.

*George G. Waller, P. P. Smith, William H. Dimmick,* and *D. H. Brown,* for defendant in error.

The theory, that the judgment was given for the purpose of hindering or defrauding creditors, is without a scintilla of evidence to support it, and is therefore beyond the pale of discussion.

The claim, that the judgment should be revived for the benefit of Mrs. Thom, is inconsistent with their argument, purely technical, and seems to have been an afterthought, raised for the first time in this Court.

The opinion of the Court was delivered by GREEN, J.

Notwithstanding the numerous assignments of error on this record, it is apparent that the case presents but a single practical question, to wit, what was the consideration for which the judgment-note in question was given? The points, with relation to the judgment having been given to hinder,

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

delay and defraud creditors, are inapplicable, because there was no evidence to support them, and it is therefore unnecessary to consider them. The plaintiffs' tenth point should have been affirmed if there had been any evidence to show that the indebtedness of $400, due by Samuel Thom to James Clarkson, was included as part of the consideration of the judgment. The Court below left it to the jury to determine this question, affirming the point unless the jury found that this indebtedness was not included in the note. The jury have found by their verdict that it was not included, and for this finding there was sufficient testimony in the case. The points in relation to the old indebtedness of the defendant to the plaintiff in the judgment, and as to its constituting part of the consideration thereof, were properly answered by referring the whole subject to the jury. Of course, whether it had been previously paid or yet remained, and whether it constituted any part of the consideration of the note in controversy, could only be questions of fact, and, as such, they were necessarily left to the jury. The only remaining question was, whether there was any actual consideration for the note other than those above indicated? None was proved, and, against the inference arising from the mere fact of the execution and delivery of the note, testimony was given which, if believed by the jury, was quite sufficient to show there was none. The only witness who was present at the execution of the note testified directly and positively that it was given reluctantly by the defendant at the solicitation of Mr. Clarkson, the plaintiff, and of Mrs. Thom, the defendant's wife, without any consideration whatever, and upon the express statement by the plaintiff that it was "for no value received." The witness details the circumstances, from which it appears that the defendant had been on a spree, and there was apprehension that he had been indorsing notes for strangers, and, in order to preserve a home for the defendant's wife, he was induced to sign the note without any consideration from Clarkson. Samuel Melville, another witness, testified that the plaintiff, Clarkson, asked him to tell Mr. and Mrs. Thom to come out and get a large note he held against him, and also their will, which was in his possession, that he repeated this request several times, and in the course of the conversation told the witness that he held a large note against them for no value received. This occurred shortly before Clarkson's death. The credibility of both these witnesses was left to the jury with proper instructions, and the jury have found by their verdict that there was nothing due to Clarkson on this judgment. As there was no evidence that Clarkson furnished

[Clarkson and Love, Admrs. of James Clarkson, deceased, *v.* Samuel Thom.]

any money to Thom when the judgment-note was signed, or conveyed to him any property, real or personal, or had any settlement with him at that time, it is quite apparent that the jury had sufficient warrant for their finding in the testimony. With the credibility of the witnesses we have nothing to do. That was exclusively for the jury. It was suggested that if the judgment-note was given for the benefit of the wife, the plaintiffs, as administrators of James Clarkson, could enforce it in any event, and were therefore entitled to a verdict and judgment, and could then be called upon by Mrs. Thom to account to her for the proceeds. Had the plaintiffs admitted the trust, and proposed to have the judgment marked to her use, there would have been much force in this suggestion. But instead of any such concession, the plaintiffs were endeavoring to enforce the judgment as the property of James Clarkson and for the benefit of his estate. This claim was in direct antagonism with any such trust, and presented the plain issue whether there was anything due to James Clarkson in his own right. That issue it was the clear right of the defendant to contest, and he could not be disqualified from making such contest upon the theory that his wife was the equitable owner of the judgment, unless the ownership was either asserted or conceded as a reply to his defence. Moreover, if the plaintiffs were allowed to recover a general verdict and judgment in this proceeding, it would be impossible to know whether it was because he owed the money to James Clarkson in his own right or as trustee for the defendant's wife. In order to raise that question, a distinct issue should have been presented in the Court below, by the plaintiffs, so that there should be no confusion or uncertainty in the event of a recovery as to the right in which it might be had. As the issue was made up, Mrs. Thom was asserting no right as equitable owner of the judgment, nor were the plaintiffs asserting any such title. It follows, therefore, that the Court below was not in error in directing the jury, that if they found that the judgment was given for the benefit of Mrs. Thom, and the plaintiffs were seeking to divert it from that purpose and recover for the use of the estate, the verdict should be for the defendant.

Judgment affirmed.

SHARSWOOD, C. J., dissents.